UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALAIN LAZARO GONZALEZ
BARRERA (A#095-510-858),

Petitioner,

v.

WARDEN, CALIFORNIA CITY
IMMIGRATION PROCESSING
CENTER, et al.,

Respondents.

No.  1:26-cv-04377-DJC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## I.     Factual and Procedural History

Petitioner is a native and citizen of Cuba who has a final administrative order of removal ("FAOR") issued on August 6, 2010.  ECF No. 5-2 at 2.[1]  He was released pursuant to an Order of Supervision ("OSUP") on September 30, 2010 after Immigration and Customs Enforcement ("ICE") "assessed that there was no significant likelihood of [his] removal to Cuba."  ECF No. 5-2 at 2.  On December 17, 2025, Petitioner was transferred into ICE custody after he served a misdemeanor sentence for Domestic Battery in the state of Florida.  See ECF No. 5-1 at 62.; ECF

---

[1]  Respondent did not file an actual copy of the FAOR, but instead rely on a Declaration from a Deportation Officer.  ECF No. 5-2.

1

No. 6 at 20 (Judgment and Sentence).

Petitioner filed the pending § 2241 petition while in custody at the California City ICE Detention Facility located in this judicial district.  ECF No. 1.  In claims one and two, Petitioner contends that his post-removal detention is unlawful because there is no likelihood of his removal to Cuba in the reasonably foreseeable future and he has no travel document or confirmed acceptance from any  third country of removal.  ECF No. 1 at 6.  Petitioner's removal is entirely speculative because there is "no functional pathway to removal."  ECF No. 1 at 6.  In claim three, Petitioner challenges his detention because he was not provided with a timely or adequate custody review.  Id.  Finally, Petitioner contends that his re-detention violates due process because his Order of Supervision was not properly revoked.  Id.

In their answer, Respondent acknowledges that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) based on his final order of removal.  ECF No. 5.  Respondent is attempting to remove Petitioner to Mexico, but he has repeatedly refused to cooperate by not signing Notices of Removal to Mexico.  ECF No. 5.  According to Respondent, Petitioner has not expressed any fear of being removed to Mexico.  Id.  Based on his lack of cooperation, Respondent also claims that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(1)(C).  ECF No. 5.  According to Respondent, Petitioner cannot satisfy his burden under Zadvydas based on this lack of cooperation.  ECF No. 5.  Respondent further asserts that Petitioner's Order of Supervision was properly revoked on December 17, 2025 based on changed circumstances and that he was provided with notice of the revocation of his supervision.  ECF No. 5.

In support of the answer, Respondent submitted a Declaration from Deportation Officer Travis Mears indicating that ICE has "operational pathways to remove certain [noncitizens] to Mexico… [and that] Petitioner is within the category of [noncitizens] who can be removed."  ECF No. 5-2 at 2 ¶ 15.  No other information was provided that describes this "operational pathway" or what efforts ICE has taken to obtain a travel document to Mexico for Petitioner to effectuate his third country removal during the seven months of his current detention.

In his traverse, Petitioner points out that Respondent "produced no documentation that the Government of Mexico has agreed to receive Petitioner, no travel documents, no removal

2

itinerary, and no diplomatic authorization.  Instead, they rely on generalized references to 'operational pathway' and characterize Petitioner's reasonable requests for documentation as 'non-cooperation.'" ECF No. 6 at 2.  This lack of any competent evidence indicating that Mexico has specifically agreed to accept Petitioner "is not a minor evidentiary gap—it is the central deficiency in Respondent's case." ECF No. 6 at 6.  According to Petitioner, Respondent "claims it can achieve in one week what it could not accomplish in fifteen years – a lawful removal.  That assertion demands individualized proof, not conclusory language about operational pathways." Id. at 7.  Regarding Petitioner's asserted lack of cooperation, "Respondent never identify which document Petitioner was required by law to sign, or which statute or regulation makes his signature a legal prerequisite to removal.  They have not shown that any travel document was delayed because of him." Id. at 11.  Finally, Petitioner submits that the revocation of his supervision was procedurally deficient because it did not contain any specific grounds for revocation, only the general assertion of a "recent criminal history" and a "failure to follow the conditions set forth" in the order of supervision.[2] Id. at 13; see also ECF No. 5-1 at (Notice of Revocation of Release).  Notably, the revocation order does not include any assertion that Petitioner's removal is likely in the reasonably foreseeable future.  See ECF No. 5-1 at 9.

Petitioner also submitted a declaration signed under penalty of perjury that is attached to his traverse.  ECF No. 6 at 26-34.  This declaration describes each of the encounters in which ICE alleges that Petitioner failed to cooperate.  ECF No. 6 at 29-32.  On these three occasions between December 2025 and June 2026, Petitioner informed ICE officials that he had a fear of being sent to Mexico.  Id.  "On each occasion when ICE officers asked [Petitioner] to agree to removal to Mexico, [Petitioner] requested to see documentation showing that Mexico had agreed to accept [him.]  On no occasion was any such documentation produced[.]" ECF No. 6 at 32.

## II.    Immigration Detention Framework After a Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is

---

[2] Petitioner correctly points out that Respondent issued an administrative warrant for Petitioner's arrest on October 7, 2025 before the criminal charges against him had even been adjudicated.  According to Petitioner, this is a post-hoc attempt to justify detention "made on grounds other than those articulated in the revocation notice."  ECF No. 6 at 15.

governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).  Since Respondents do not provide a copy of Petitioner's FAOR, the Court is unable to determine whether Petitioner falls within any of these categories.

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]"  533 U.S. at 692.  In order to avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.  As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699.  In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of detention. Id. at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701.  Where, as here, Petitioner was issued a final order of removal, detained, and subsequently released and then redetained, "it is [ICE's] burden to show a

4

significant likelihood that the [noncitizen] may be removed" pursuant to 8 C.F.R. § 241.13(i)(2). Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

### III.   Analysis

The parties agree that Petitioner's order of removal became final on August 6, 2010.  This shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed.  Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Respondent argues that Petitioner's failure to consent to his third country removal to Mexico restarts the mandatory 90-day period of post removal detention pursuant to 8 U.S.C. § 1231(a)(1)(C).  DHS regulations allow the government to extend the removal period "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal."  8 C.F.R. § 241.4(g)(1)(ii).  To do so, the government must issue a "Notice of Failure to Comply" prior to the expiration of the removal period.  Id.  Here, Respondent has not put forth any evidence of Petitioner's alleged noncooperation with identify verification, travel-document processing, or other required steps that would justify the government's extension of the § 1231(a)(1)(C) removal period and defeat Petitioner's claim. Therefore, the undersigned rejects Respondent's argument that Petitioner is still subject to mandatory detention pursuant to 8 U.S.C. § 1231(a).

Based on Petitioner's prior release on supervision and his re-detention in December 2025, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case.

See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).  Therefore, Respondent has the burden of demonstrating that there is a significant likelihood that the Petitioner may be removed to Mexico pursuant to 8 C.F.R. § 241.13(i)(2) in order to justify his detention.  An IJ ordered Petitioner removed to Cuba, but Respondent makes no attempt to demonstrate that his removal to Cuba is likely in the reasonably foreseeable future. Instead, Respondent asserts that Petitioner is subject to removal to the third country of Mexico. Because Respondent failed to provide the Court with a copy of any agreement with the government of Mexico to accept Petitioner, the undersigned finds that Respondent has not met their burden of demonstrating that there is a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future.   "[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [Petitioner] any time soon."  Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025).

A great deal of emphasis is placed on Petitioner's consent to third country removal to Mexico in the parties' briefing.  This suggests to the Court that there are specific criteria that must be met, of which the noncitizen's consent is one, before a Cuban national can be removed to Mexico.  See Rodriguez-Fernandez v. Bondi, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (finding that the bilateral agreement between the U.S. and Mexico is contingent upon the noncitizens consent to be removed to Mexico).  Ultimately, the undersigned does not find it necessary to address this specific criteria because Respondent does not identify any specific steps that they have taken **with the Mexican government** to arrange for Petitioner's removal to that country.  Accordingly, Petitioner's detention is unlawful and he must be released. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable).

For all of these reasons, the undersigned recommends that the § 2241 petition be granted on claim two and that Respondent be ordered to release Petitioner immediately.[3]  Respondent

---

[3]  In the interests of judicial economy, the undersigned finds it unnecessary to address the remaining claims in the § 2241 petition based on the recommendation to grant relief on claim one.

may place Petitioner on the same conditions of supervision in place prior to his re-detention on January 21, 2026.  See Zadvydas, 533 U.S. at 700 (holding that a noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Given that the record does not show concrete steps being taken to remove Petitioner to Mexico, the Court need not fully address Petitioner's claim that he cannot be removed to Mexico in light of his claimed fear of harm there.  However, the Court briefly notes here what the law already provides: Our immigration laws prohibit a noncitizen from being removed to any country where his or her life or freedom would be threatened on account of a protected ground or where it is more likely than not that he or she would be tortured if removed to the proposed country of removal.  See 8 U.S.C. § 1231(b)(3), 8 C.F.R. §§ 208.16-18, 1208.16-18; 28 C.F.R. § 200.1 (prohibiting the execution of any removal order that would violate Article 3 of the Convention Against Torture).  Under Ninth Circuit authority, "[f]ailing to notify individuals who are subject to deportation that they have a right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."  Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999).  If the government seeks to remove Petitioner to Mexico, they must provide him with a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture as to that country.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.	Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED on claim two that his post-removal detention is unlawful because there is no significant likelihood of his removal to Mexico in the reasonably foreseeable future.

2.	Respondent be directed to immediately release Petitioner ALAIN LAZARO GONZALEZ BARRERA (A#095-510-858) on the same conditions of release in place at the time of his re-detention on December 17, 2025.

3.	 Respondent be directed to file a notice of compliance within three (3) days of any

order adopting these findings and recommendations.

4. Respondent be prohibited from redetaining Petitioner without first complying with 8 U.S.C. § 241.13.

5. The Clerk of the Court be directed to:

a. Serve the California City Correctional Facility with a copy of any order of release; and

b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 20, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

8